IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2007

Charles R. Fulbruge III
Clerk

No. 05-61186

LAURENE C. CUVILLIER,

                                        Plaintiff-Appellant,

        versus

JOHNNIE SULLIVAN; BETTY POLK; HUGH C. REDHEAD;
ELMIRA WILLIAMS; SHERRY JACKSON; RICHARD HARRIS; and
DONALD R. TAYLOR,

                                        Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Mississippi

Before GARWOOD, BARKSDALE, and GARZA, Circuit Judges.

GARWOOD, Circuit Judge:

        Plaintiff-appellant Laurene Cuvillier (Cuvillier) brought this action pursuant to 42 U.S.C. § 1983, asserting a deprivation of rights secured by Title IV-D of the Social Security Act, 42 U.S.C. §§ 651-669b. Because we conclude that the provisions Cuvillier relies on do not give rise to individual rights, we affirm the district court's dismissal of this suit.

**FACTS AND PROCEEDINGS BELOW**

In 1983, Robert and Anne Harrison were granted a divorce by decree entered in Atlanta, Georgia. Anne Harrison subsequently changed her name to Laurene Cuvillier. As part of the divorce decree, Robert Harrison (Harrison) was required to pay $3,000.00 monthly in child support to Cuvillier. Harrison failed to do so. In 1990, Cuvillier terminated Harrison's parental rights for abandonment and failure to pay child support.

In December of 1993, Cuvillier attempted to collect the past due child support through the Georgia Department of Human Resources (GDHR). By that time, however, Harrison no longer lived in Georgia; he resided in Hazlehurst, Copiah County, Mississippi, where he owned a home and business. Accordingly, in February of 1994, GDHS forwarded a request for collection of the arrears of $261,000.00 to the Copiah County Child Support Enforcement Office (CCCSEO), a subdivision of the Mississippi Department of Human Services (MDHS).

Cuvillier alleges that she made "repeated inquiries" regarding the status of her claims, but that CCCSEO failed to pursue them. On or after June 12, 2002, however, CCCSEO filed a court action against Harrison to collect the child support.[1] Unfortunately, Harrison died on November 21, 2002, before the case could be heard

---

[1] The complaint alleges that "the claims herein were fraudulently concealed by one or more of the Defendants, and Plaintiff, although exercising reasonable diligence, was not able to know or discover her claim until after June 12, 2002", and that defendants Sullivan (CCCSEO Child Support Enforcement supervisor) and Polk (Regional Director, Child Support Enforcement, MDHS) had "repeatedly assured Plaintiff that they were attempting to collect the arrears."

in court.  His estate did not pay any of the arrears.

Cuvillier (proceeding *pro se*, here and below) filed this suit on Monday, June 13, 2005, under 42 U.S.C. § 1983 against various CCCSEO employees and MDHS officials: Donald Taylor, Executive Director of MDHS; Johnnie Sullivan, supervisor of CCCSEO Child Support Enforcement; Elmira Williams and Sherry Jackson, both CCCSEO caseworkers; Hugh Redhead, attorney for CCCSECO Child Support Enforcement; Richard Harris, Director of Child Support Enforcement at MDHS; and Betty Polk, the MDHS Regional Director of Child Support Enforcement MDHS.  Cuvillier asserted a deprivation of rights secured by various provisions of Title IV-D of the Social Security Act, 42 U.S.C. §§ 651–669b, and 45 C.F.R. §§ 303.3, 303.6, alleging specifically that:

> "Defendants' deliberate and intentional decision to take no action on collection of the child support arrears which was due to plaintiff's children; and Defendants' failure to inform plaintiff of that decision, so that plaintiff could pursue other means of collection; resulted in plaintiff being deprived forever of her opportunity to collect support from Robert Ray Harrison."

On August 8, 2005, Defendants moved for dismissal of Cuvillier's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, arguing that Title IV-D did not create a privately enforceable federal right, as indicated by *Blessing v. Freestone*, 117 S.Ct. 1353 (1997).  Cuvillier filed a reply to the motion on August 25, 2005.  On September 23, 2005, Defendants filed "Defendants' Second Motion To Dismiss," under Rule

12(b)(6) urging as additional grounds that—even if the relevant Title IV-D provisions secure individual rights—the applicable statute of limitations and Eleventh Amendment immunity barred Cuvillier's claim. Cuvillier filed a response to the second motion on October 5, 2005.

The district court granted Defendants' second motion to dismiss in an opinion and order filed November 15, 2005.[2] The court concluded, "without considering whether plaintiff can maintain a claim under title IV", that "any such putative claim would be time barred under the applicable statute of limitations." Determining that the applicable limitations period was three years, the district court noted that, because Cuvillier filed suit on June 13, 2005, her claim "should have accrued sometime after June 13, 2002." The court found, however, that Cuvillier's claim accrued much earlier:

> "Federal regulation promulgated in accordance with Title IV-D provides that state IV-D agencies must take action to enforce support obligations no later than 60 days after the agency is notified of a delinquency. 45 C.F.R. § 303.6(b)(2). Plaintiff alleges that Defendants were first apprised of Mr. Harrison's delinquency in February 1994. Therefore, Defendants allegedly violated Plaintiff's Title IV-D rights no later than May 1, 1994, when Defendants failed to act within 60 days. Further, Plaintiff alleges that she made repeated inquiries to Defendants prior to June 12, 2002, the date Defendants began legal proceedings against Mr. Harrison. Thus, the Court can reason that Plaintiff was aware of the alleged violation of her statutory right and the resulting injury prior to June 13, 2002."

---

[2]The court's November 15, 2005 order states that the case "is before the Court on" Defendants' first and second motions to dismiss.

4

The district court also addressed Cuvillier's argument that the Defendants' fraudulent concealment prevented her from discovering her claims until after June 12, 2002. Observing that it was only necessary that Cuvillier knew the facts that would support a claim, the Court concluded that because she had repeatedly made inquiries regarding what action was being taken, Cuvillier was "aware of the fact that Defendants were not pursuing her claims in a timely manner more than three years before she filed this suit."

The district court entered final judgment and dismissed the action with prejudice on November 15, 2005. Cuvillier timely filed notice of appeal on December 14, 2005.

**DISCUSSION**

I. STANDARD OF REVIEW

We review *de novo* a district court's dismissal under Rule 12(b)(6).[3] *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006) (per curiam). "In doing so, we accept as true the well-pleaded factual allegations in the complaint." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). To survive a Rule 12(b)(6) motion to dismiss, a complaint "does not need detailed factual allegations," but must provide the plaintiff's grounds for entitlement to relief—including factual allegations

---

[3]Under Rule 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

that when assumed to be true "raise a right to relief above the speculative level."[4] *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 127 S.Ct. at 1966 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216, at 234 (quoting *Daves v. Hawaiian Dredging Co.*, 114 F. Supp. 643, 645 (D. Haw. 1953) (internal quotation marks omitted)). We may affirm a district court's Rule 12(b)(6) dismissal on any grounds raised below and supported by the record. *Hosein*, 452 F.3d at 403; *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).

## II. STATUTE OF LIMITATIONS

Because Congress has not specified a limitations period for section 1983 suits, in such cases "federal courts borrow the forum state's general personal injury limitations period." *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995). The relevant limitations period in Mississippi is three years from the

---

[4]In the past, this court has frequently used the expression that a case will not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *E.g.*, *Kennedy v. Tangipahoa Parish Library Bd. Of Control*, 224 F.3d 359, 365 (5th Cir. 2000) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The Supreme Court, however, recently retired *Conley*'s "no set of facts" language. *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007) (stating that "[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

day the cause of action accrues. MISS. CODE ANN. § 15-1-49 (2003)[5];
*see also James v. Sadler*, 909 F.2d 834, 836 (5th Cir. 1990) (in §
1983 suit, finding "the three year residual period provided by
Section 15-1-49, Miss. Code Ann. applies"). The limitations period
starts to run when the plaintiff becomes aware or has sufficient
information to know that he or she suffered an injury. *Piotrowski*,
51 F.3d at 516. Relying on 45 C.F.R. § 303.6(c)(2),[6] the district
court concluded that this three-year period ran from May 1, 1994.
On appeal, Cuvillier asserts that the limitations period began to
run much later: from June 12, 2002, when she "first learned from
MDHS that no prior legal collection actions at all had commenced
until that date."[7]

We decline to decide this case on statute of limitations
grounds. First, we find it unnecessary to do so since, as we

---

[5]Mississippi Code 1972 Annotated § 15-1-49, "Limitations applicable to actions not otherwise specifically provided for," states in pertinent part that "[a]ll actions for which no other period of limitation is prescribed shall be commenced within three (3) years next after the cause of such action accrued, and not after."

[6]The district court cited 45 C.F.R. § 303.6(b)(2) for the proposition that "state IV-D agencies must take action to enforce support obligations no later than 60 days after the agency is notified of a delinquency." However, the correct citation appears to be § 303.6(c)(2).

[7]Defendants argue that even if Cuvillier is correct that her cause of action accrued on June 12, 2002, the three-year limitations period bars her suit because she did not file her complaint until June 13, 2005, one day after three years had passed. As Cuvillier points out, however, this argument overlooks the fact that June 13, 2005 was a Monday. Therefore, the case was properly filed under Federal Rule of Civil Procedure 6(a), which states in pertinent part that when computing a period of time allowed "by any applicable statute," "The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, . . . in which event the period runs until the end of the next day which is not one of the aforementioned days."

7

explain below, Cuvillier has not asserted a federal right enforceable under section 1983. Second, it is less than clear that the 12(b)(6) dismissal on limitations grounds was appropriate. Using the same standard as the district court, we "must look only at the pleadings and accept all allegations in them as true." *St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.*, 937 F.2d 274, 279 (5th Cir. 1991) (contrasting the standard for Rule 12(b)(6) motions to dismiss with that for summary judgment motions under Federal Rule of Civil Procedure 56). Cuvillier alleges in her complaint and on appeal that when she made inquiries regarding attempts to collect the past due child support, CCCSEO officials assured her that they were taking action and fraudulently concealed from her the claims alleged in her complaint. She claims that consequently she was unable to discover her claims before June 12, 2002.[8] For purposes of the instant appeal we therefore assume *arguendo* that Cuvillier brought her suit before the limitations period expired. We proceed to consider whether the Title IV-D provisions relied on by Cuvillier give her federal rights.

### III. TITLE IV-D and 42 U.S.C. § 1983

Section 1983 makes liable anyone who, "under color of state

---

[8]Moreover, as Cuvillier points out, although the district court correctly noted that 45 C.F.R. § 303.6(c)(2) states that when service of process is necessary, enforcement action must be taken "within no later than 60 calendar days of identifying a delinquency," the district court omitted the end of that provision, which makes clear that enforcement action must be taken within 60 days of whichever occurs later—identifying a delinquency *or* identifying "the location of the noncustodial parent."

law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'" *Blessing v. Freestone*, 117 S.Ct. 1353, 1359 (1997). The Supreme Court has held that this provision protects certain *rights* conferred by federal statutes. *Id.* Violation of a federal *law* is insufficient for redress through section 1983; a plaintiff must assert violation of a federal *right*. *Id.* Three factors set out in *Blessing* provide guidance in determining whether a statutory provision gives rise to an individual federal right:

> "First, Congress must have intended that the provision in question benefit the plaintiff. *Wright,* 479 U.S., at 430, 107 S.Ct., at 773-774. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence. *Id.*, at 431-432, 107 S.Ct., at 774-775. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms. *Wilder*, *supra*, at 510-511, 110 S.Ct., at 2517-2518; see also *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539-1540, 67 L.Ed.2d 694 (1981) (discussing whether Congress created obligations giving rise to an implied cause of action)." *Id.* at 1359–60.

Once a plaintiff demonstrates that a federal statutory provision creates an individual right, a rebuttable presumption exists that the right is enforceable under section 1983. *Id.* at 1360.

In *Blessing*, five Arizona mothers with children eligible for Title IV-D child support services claimed that the state child support "agency never took adequate steps to obtain child support

payments from the fathers of their children." *Id*. at 1358. The Ninth Circuit had determined that the mothers had an enforceable individual right to have the state's child support program "achieve 'substantial compliance' with the requirements of Title IV-D." *Id*. at 1356.

The Supreme Court disagreed. *Id*. First, the Court stated that Title IV-D could not be analyzed "so generally." *Id.; see also id*. at 1360 (commenting that "the lower court's holding that Title IV-D 'creates enforceable rights' paints with too broad a brush"). The Court emphasized that the plaintiffs needed to "identify *with particularity* the rights they claimed, since it is impossible to determine whether Title IV-D, as an undifferentiated whole, gives rise to undefined 'rights.'" *Id*. at 1360 (emphasis added).

Second, the Court held that "Title IV-D does not give individuals a federal right to force a state agency to substantially comply with Title IV-D." *Id*. at 1356. In making this determination, the Court observed that the five mothers were not intended beneficiaries of the statutory provisions on which they relied: "[T]he requirement that a State operate its child support program in 'substantial compliance' with Title IV-D was not intended to benefit individual children and custodial parents, and therefore it does not constitute a federal right." *Id*. at 1361. The Court explained that the "substantial compliance" standard is

10

"simply a yardstick for the Secretary to measure the *systemwide* performance of a State's Title IV-D program"; that even when a state meets the substantial compliance standard, "any individual plaintiff might still be among the 10 or 25 percent of persons whose needs ultimately go unmet"; and that, assuming a state falls below the standard, the Secretary can only reduce the state's funding by up to five percent. *Id*. Title IV-D "may ultimately benefit individuals who are eligible for Title IV-D services, but only indirectly." *Id*. Further, the Court noted that regulations requiring state child support enforcement units to have "sufficient staff" espouse an "undefined standard" that would strain judicial competence if enforced through section 1983. *Id*. at 1362.

While the Court concluded that the Arizona mothers had failed to establish that Title IV-D gave them federal rights, the Court nevertheless declined to foreclose the possibility that *some* Title IV-D provisions might give rise to individual rights. *Id*. The Court stated:

> "For example, respondent Madrid alleged that the state agency managed to collect some support payments from her ex-husband but failed to pass through the first $50 of each payment, to which she was purportedly entitled under the pre-1996 version of § 657(b)(1). Although § 657 may give her a federal right to receive a specified portion of the money collected on her behalf by Arizona, she did not explicitly request such relief in the complaint." *Id*. (citation omitted).

The Court concluded that, regardless of whether any Title IV-D provisions secure a federal right, the five Arizona mothers had not

11

clearly alleged a violation of any such particular right. *See id.* (sending the case back to the district court to "determine exactly what rights, considered in their most concrete, specific form, respondents are asserting").

In the instant case, Cuvillier cites several specific statutory provisions that she claims support her contention that Title IV-D gives her a federal right to child support or child support collection. These are: 42 U.S.C. §§ 651–652(a)(1), (h) and 654(4)(B),(13).[9] Cuvillier asserts that these specific provisions

[9]42 U.S.C. § 651, "Authorization of appropriations," states: "For the purpose of enforcing the support obligations owed by noncustodial parents to their children and the spouse (or former spouse) with whom such children are living, locating noncustodial parents, establishing paternity, obtaining child and spousal support, and assuring that assistance in obtaining support will be available under this part to all children (whether or not eligible for assistance under a state program funded under part A of this subchapter) for whom such assistance is requested, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part." 42 U.S.C.A. § 651 (West 2003).

42 U.S.C. § 652(a)(1) states:
"**(a) Establishment of separate organizational unit; duties**
The Secretary shall establish, within the Department of Health and Human Services a separate organizational unit, under the direction of a designee of the Secretary, who shall report directly to the Secretary and who shall—
**(1)** establish such standards for State programs for locating noncustodial parents, establishing paternity, and obtaining child support and support for the spouse (or former spouse) with whom the noncustodial parent's child is living as he determines to be necessary to assure that such programs will be effective;" 42 U.S.C.A. § 652(a)(1) (West Supp. 2007).

Subsection (h) of 42 U.S.C. § 652 states:
"**(h) Prompt State response to requests for child support assistance**
The standards required by subsection (a)(1) of this section shall include standards establishing time limits governing the period or periods within which a State must accept and respond to requests (from States, jurisdictions thereof, or individuals who apply for services furnished by the State agency under this part or with

12

satisfy *Blessing*'s three factor test.  We disagree and conclude that Cuvillier has not shown that these statutory sections give her a federal right.

Although we have not addressed post-*Blessing* whether the Title IV-D provisions relied on by Cuvillier give rise to individual federal rights, we note that the Sixth Circuit faced an appeal similar to Cuvillier's in *Clark v. Portage County, Ohio*, 281 F.3d 602 (6th Cir. 2002).[10]  The plaintiff in *Clark* brought suit under

respect to whom an assignment pursuant to section 608(a)(3) of this title is in effect) for assistance in establishing and enforcing support orders, including requests to locate noncustodial parents, establish paternity, and initiate proceedings to establish and collect child support awards."  *Id*. § 652(h).

The portions of 42 U.S.C. § 654, "State plan for child and spousal support," cited by Cuvillier state:
  "A State plan for child and spousal support must—
     . . .
  (4) provide that the State will—
     ...
        (B) enforce any support obligation established with
      respect     to—
           (i) a child with respect to whom the State provides
  services under the plan; or
           (ii) the custodial parent of such a child;
     . . .
        (13) provide that the State will comply with such other
  requirements and standards as the Secretary determines to be
  necessary to the establishment of an effective program for
  locating noncustodial parents, establishing paternity, obtaining
  support orders, and collecting support payments and provide that
  information requests by parents who are residents of other States
  be treated with the same priority as requests by parents who are
  residents of the State submitting the plan;"  *Id*. § 654(4) & (13).

[10]Post-*Blessing*, a few other sister circuits have faced issues related to child support under Title IV-D.  For example, the Eighth Circuit held that 42 U.S.C. § 657 "does not create an individual right to distribution in strict compliance with its terms."  *Walters v. Weiss*, 392 F.3d 306, 313 (8th Cir. 2004).  More recently, in *Arrington v. Helms*, 438 F.3d 1336, 1347 (11th Cir. 2006), the Eleventh Circuit concluded that 42 U.S.C. § 657 "does not confer a private right to distribution of child support payments enforceable under § 1983."  The circumstances presented to the Sixth Circuit in *Clark*, however,

13

section 1983 claiming that county officials "failed to provide the enforcement services required to collect outstanding child support payments in violation of Title IV-D."  281 F.3d at 603.  The plaintiff relied on 42 U.S.C. § 654(4)(B)—relied on by Cuvillier in this case—and 42 U.S.C. § 654(8) as statutory provisions giving her the right to sue under section 1983, and asserted that 45 C.F.R. §§ 303.3 and 303.6—also relied on by Cuvillier—evidenced this federal right.  *Id*. at 604.  The Sixth Circuit concluded that the cited statutory provisions did not give rise to an individual right to sue because "the Plaintiff's claimed interests, like those of the plaintiffs in *Blessing*, are so vague and amorphous as to be beyond the competence of the judiciary to enforce on behalf of individuals."  *Id*.  The court explained further:

> "For example, the state plan requirements in § 654(4)(B) do not make it clear whether an individual right would arise based on the alleged inadequacy of the state plan's wording or from a deficiency in the enforcement efforts of the agency.  The lack of such parameters indicates that, regardless of whether the Plaintiff is an intended beneficiary of Title IV-D, Congress did not intend to give her a private right of action to challenge agency actions."  *Id*. at 604–05.[11]

We agree with the Sixth Circuit in *Clark* that "the simple lack of effectiveness by a state in enforcing support obligations does

---

are most comparable to those currently before us, and Cuvillier does not rely on 42 U.S.C. § 657.

[11]The court did not actually decide whether the plaintiff was an intended beneficiary of Title IV-D.  *See* 281 F.3d at 604 (assuming the plaintiff to be an intended beneficiary—"a question we need not decide").

14

not alone give rise to an individual right."[12]  *Id*. at 605. Cuvillier may in some sense be a beneficiary of the Title IV-D provisions that she cites, but Congress did not intend by those provisions to give her an individual right enforceable through a section 1983 suit.  *Gonzaga University v. Doe*, 122 S.Ct. 2268 (2002), instructs this result.[13]  In *Gonzaga University*, the Supreme Court made clear that courts should not read *Blessing* too broadly. That is, the Court noted that some courts had read *Blessing* "as allowing plaintiffs to enforce a statute under § 1983 so long as the plaintiff falls within the general zone of interest that the statute is intended to protect."  122 S.Ct. at 2275; *see also S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 602 (5th Cir. 2004).  But in *Gonzaga University* the Court clarified the standard for finding a right enforceable under section 1983: "We [] reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983. . . . [I]t is *rights*, not the broader or vaguer 'benefits' or 'interests,' that

---

[12]We note that, while the Sixth Circuit in *Clark* found the plaintiff's asserted rights too "vague and amorphous" and compared this deficiency to the interests of the Arizona mothers in *Blessing*, we have previously concluded that *Blessing* "never reached the vague-and-amorphous question because it found that the plaintiffs had not 'identified with particularity the rights they claimed.'" *Evergreen Presbyterian Ministries Inc. v. Hood*, 235 F.3d 908, 930 n.28 (5th Cir. 2000).

[13]In *Gonzaga University*, the Court considered whether a student may sue a private university for damages under section 1983 based on provisions of the Family Educational Rights and Privacy Act of 1974 (FERPA), 88 Stat. 571, 20 U.S.C. § 1232g, that "prohibit the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons."  122 S.Ct. at 2271.

may be enforced under the authority of that section." 122 S.Ct. at 2275. Thus the Court made clear in *Gonzaga University* that individuals may be beneficiaries even though Congress did not confer a right on them.[14] This, we conclude, is Cuvillier's situation.

Moreover, the language of the statutory provisions cited by Cuvillier belies her assertion that Title IV-D gives her a federal right to child support or child support collection on her behalf. Specifically, the provisions' language does not focus on the individuals benefitted, but rather focuses entirely on the state agency and what the agency should be doing. For example, 42 U.S.C. § 654(4) and (13) both focus on the *state agency's plan* for child and spousal support and the fact *that such a plan should provide for enforcement of support*, for compliance with other requirements necessary for an effective child support program, and for equal treatment of information requests by residents and non-residents. *The subsections do not focus on the individual beneficiaries* of the state agency's plan. This lack of focus on individuals like Cuvillier counsels against finding a federal right. *See Gonzaga Univ.*, 122 S.Ct. at 2279 (statutory provisions had an "aggregate, not individual focus"). *Compare Evergreen Presbyterian Ministries*

---

[14]As we have previously noted, *Gonzaga University* illustrates that the Supreme Court's "approach to § 1983 enforcement of federal statutes has been increasingly restrictive; in the end, very few statutes are held to confer rights enforceable under § 1983." *Johnson v. Hous. Auth. of Jefferson Parish*, 442 F.3d 356, 360 (2006), *cert. denied*, 127 S.Ct. 136 (2006).

16

*Inc. v. Hood*, 235 F.3d 908, 927 (5th Cir. 2000) (finding that Medicaid recipients are intended beneficiaries of Medicaid Act provision 42 U.S.C. § 1396a(a)(30)(A), "because the provision is 'phrased in terms' benefitting recipients in that it directly focuses on their access to medical care" (citing *Wilder v. Virginia Hosp. Ass'n*, 110 S.Ct. 2510, 2518 (1990))), *with id*. at 929 (concluding that section 30(A) does not confer an individual right on health care providers "because the section does not focus directly on providers").

The existence of Cuvillier's asserted federal right is all the more clearly foreclosed considering that Title IV-D constitutes spending legislation. As the Court made clear in *Gonzaga University*, for a particular provision of a funding statute to give rise to a federal right enforceable through section 1983, Congress must have *unambiguously* conferred the right on the individual. *See* 122 S.Ct. at 2273 (stating that the Court has previously "made clear that unless Congress 'speak[s] with a clear voice,' and manifests an 'unambiguous' intent to confer individual rights, federal funding provisions provide no basis for private enforcement by § 1983" (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 101 S.Ct. 1531, 1540, 1545 & n.21 (1981))). The FERPA provisions relied on by the *Gonzaga University* plaintiff did not give rise to the federal right he asserted in part because "they serve[d] primarily to direct the Secretary of Education's distribution of

17

public funds to educational institutions." *Id*. at 2271–72, 2279. Further, the relevant FERPA provisions' "reference[s] to individual consent is in the context of describing the type of 'policy or practice' that triggers a funding prohibition." *Id*. at 2278.

Cuvillier's asserted right stands in contrast to the type of situation that the Court in *Blessing* suggested might–or might not–evidence a Title IV-D based right enforceable under section 1983. *See* 117 S.Ct. at 1362 (suggesting that the pre-1996 version of 42 U.S.C. § 657(b)(1) might give the plaintiff a "federal right to receive a specified portion of the money collected on her behalf by Arizona"). In the situation referred to by the Court in *Blessing*, the plaintiff had alleged "that the state agency managed to collect some support payments from her ex-husband but failed to pass through the first $50 of each payment," to which she claimed entitlement until Title IV-D. *Id*. Thus, the plaintiff in *Blessing* alleged that the state agency had effectively taken *away* from her specific funds in its possession which the statute made her property. Here, in Cuvillier's case, the state agency simply did not do anything.

Lastly, we reject Cuvillier's reliance on 45 C.F.R. § 303.3 and § 303.6. Both of these sections are within part 303 of 45 C.F.R. Ch. III (2002). Section 303.00 ("Scope and applicability of this part") states that:

"This part prescribes:
    (a) The minimum organizational and staffing

18

> requirements the State IV-D agency must meet in carrying out the IV-D program, and
>       (b) The standards for program operation which the IV-D agency must meet."

Thus, these regulations are focused on and directed at, and speak to, the State and its *program*, not at or to individual beneficiaries. Section 303.3 ("Location of noncustodial parents") provides that "the IV-D agency must attempt to locate all noncustodial parents," § 303.3(b), and "[w]ithin no more than 75 calendar days of determining that [knowing the noncustodial parent's] location is necessary [to enforcement] . . . ensure that location information is sufficient to take the next appropriate action in a case." Section 303.6 states that "the IV-D agency must maintain and use an effective system for: . . . (c) Enforcing the obligation by: . . . (2) [t]aking any appropriate enforcement action . . . unless service of process is necessary . . . within no more than 30 calendar days of identifying a delinquency . . . or the location of the noncustodial parent, whichever occurs later. If service of process is necessary . . . service must be completed (or unsuccessful attempts to serve process must be documented . . .), and enforcement action taken if process is served, within no later than 60 calendar days of identifying a delinquency . . . or the location of the noncustodial parent, whichever occurs later." Again, this is directed to the *state* and its focus is on the *state's* "maintenance and use" of "an effective *system*" (emphasis added). The mandate is for *the state* to maintain a child support

*system.*   These regulations simply do not purport to create an individual federal *right* in beneficiaries.[15]

No doubt Congress meant for individuals like Cuvillier to fall within the sphere of Title-IV's benefits.  As *Gonzaga University* indicates, however, this circumstance is insufficient to find a federal right secured by the statutory scheme.  Congress did not intend the provisions Cuvillier relies on to give rise to an individual federal right to child support or child support collection.

## CONCLUSION

Because we find that Cuvillier has not asserted a violation of a federal right for which redress may be sought under 42 U.S.C. § 1983, we affirm the district court's dismissal of this suit.

AFFIRMED.

---

[15]We also note that in *Arrington v. Helms*, 438 F.3d 1336, 1340 n.4 (11th Cir. 2006), the Eleventh Circuit held that regulations under Title IV-D could not create rights enforceable under § 1983 because the statute in relation to which regulations were adopted did not create such rights.  "If the statute at issue does not create rights enforceable under 42 U.S.C. § 1983, then neither do the regulations adopted under that statute."  *Id*.

20