# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 21, 2019

Lyle W. Cayce
Clerk

No. 18-20155

LESLIE W. SHIPMAN, also known as in error as Lester W. Shipman,

      Plaintiff - Appellant

v.

SHERIFF DONALD SOWELL; SHERIFF TOMMY GAGE;
JOSEPH SCLIDER; DAVID COOK; ALTON NEELY; TUCK MCLAIN;
GRIMES COUNTY; MONTGOMERY COUNTY,

      Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:16–CV–692

Before JONES, HAYNES, and OLDHAM, Circuit Judges

EDITH H. JONES, Circuit Judge:*

This is an appeal of the district court's dismissal of multiple claims brought by the Appellant under 42 U.S.C. § 1983 and state law for what he asserts was an unjustifiable investigation and prosecution, combined with seizure of vehicles associated with his attempt at conducting an auto auction. For the following reasons, the district court's judgment is AFFIRMED.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-20155

I.

Leslie Shipman and law enforcement officers in Montgomery and Grimes counties, Texas, are well-acquainted with one another. Officers in the "Montgomery County Auto Theft Task Force" (the "Task Force"), which was operated jointly by the Montgomery and Grimes county sheriffs' departments, suspected that Shipman was selling stolen vehicles out of his auto body shop. Shipman accuses the police of having a vendetta against him. After multiple run-ins with local police in 2013–14, including arrests and citations for offenses related to improperly selling or transporting vehicles, Shipman decided to sell his remaining inventory and move out of town. When Shipman, his business partner Jerry Williams, and an auctioneer named Israel Curtis (whose license had lapsed) organized a car auction in June 2015, the Task Force took notice. They suspected that Shipman "did not have proper title paperwork for the vehicles" he planned to sell, partly because prior police reports had indicated that Shipman was dealing vehicles without proper titles.

After a drive by the property confirmed that "numerous vehicles at [Shipman's] shop were titled in third party names," law enforcement requested a warrant to search the property. A Grimes County Magistrate Judge found probable cause to suspect that Shipman and his companions were conducting an unlicensed auction and illegally selling vehicles without proper paperwork. After the auction began, authorities executed the warrant and seized fifty-six vehicles and an assortment of paperwork from Shipman's auto shop. Shipman was subsequently indicted by a Texas grand jury for engaging in organized criminal activity by tampering with government records in violation of Texas Penal Code §§ 37.10(a) and 71.02(a)(13).

Shipman responded by filing a federal case against the Task Force members and both counties, seeking damages under § 1983 for violations of his First, Fourth, and Fourteenth Amendment rights and state tort violations.

2

No. 18-20155

While Shipman's federal suit was pending, the state criminal case was resolved by his guilty plea in state court to the lesser included charge of selling a vehicle without a license in violation of Texas Transportation Code § 501.109, a Class C Misdemeanor. When the state court accepted Shipman's plea, it also held a hearing to facilitate the return of the seized vehicles. As the defendants acknowledge, no paperwork problems were found to have existed with respect to the seized vehicles, but the hearing extensively covered issues of uncertain ownership of many of the vehicles.

We have attempted to identify the precise claims raised by Shipman in his federal complaint, which alleged that several county officials violated his rights before and after the June 27 raid in a variety of ways:

- First, Shipman alleged that Grimes County District Attorney Tuck McLain violated his First Amendment rights by seeking the grand jury indictment against him in retaliation after Shipman's counsel published a blog post accusing the officials of misconduct. Shipman accused McLain of violating his Fourteenth Amendment rights by selectively prosecuting Shipman even though he knew the case was meritless; by advising the Task Force not to return Shipman's business records; and by instructing his staff to discriminate against Shipman's trial counsel by not "offer[ing] deferred adjudication to [his] clients."

- Second, Shipman alleged that the commander of the task force, Montgomery County officer Joseph Sclider, violated his Fourth and Fourteenth Amendment rights by making false statements to the magistrate judge to obtain the search warrant; by falsely stating on local TV suggesting that the vehicles seized in the raid may have been stolen; and by coercing a witness into stating that he had not given the men permission to sell his car.

3

No. 18-20155

- Third, Shipman alleged that Grimes County Sheriff Donald Sowell violated his Fourth Amendment rights by preventing the return of the vehicles and records "to prevent Mr. Shipman from financing his criminal defense and his civil litigation," even though the vehicles had "no evidentiary value." He also claimed that Sowell ratified misconduct by Sclider and the Task Force.

- Fourth, Shipman alleged that Montgomery County Sheriff Tommy Gage violated his Fourth Amendment rights by never investigating Sclider's alleged misconduct after Shipman's counsel sent Gage a letter notifying him about the misconduct, and by failing to supervise or train the Task Force officers.

- Finally, Shipman alleged state law tort claims including, *inter alia*, slander, tortious interference, and conspiracy.

The Defendants moved to dismiss Shipman's case for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). The district court granted the motion to dismiss, and Shipman timely appealed to this court.

The district court held that Shipman failed to state plausible claims under the First and Fourteenth Amendments; his Fourth Amendment claims were barred by the Supreme Court's decision in *Heck v. Humphrey,* 512 U.S. 477, 114 S. Ct. 2364 (1994); and his state law tort claims were barred by the Texas Tort Claims Act ("TTCA").

## II.

This court reviews a district court's dismissal of a claim *de novo. United States ex rel. v. Dow Chem. Co.,* 343 F.3d 325, 328 (5th Cir. 2001) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks and citation

4

omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). In short, although a complaint "does not need detailed factual allegations," it nevertheless must contain factual allegations that, when assumed to be true, "raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal quotation marks and citation omitted).

We note at the outset that some aspects of Shipman's appellate briefing fail to provide the necessary specificity, such as which defendant committed which act. Nothing at all, for instance, is written about defendants Neely or Cook. Any claims against unnamed defendants, Neely and Cook are therefore waived. *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) ("Where analysis is so deficient, this court has considered the issue waived for inadequate briefing.") (citation omitted). The briefing about the legal or factual basis for the liability of each County is conclusional and inadequate, consequently the claims against Montgomery and Grimes County are waived. Liability based on actions of "coconspirators" is referenced only in Shipman's reply brief and is therefore waived. Finally, although Shipman's brief on appeal seems to argue for several pages a claim for malicious prosecution under the Fourth Amendment, no such claim is actually stated in the Third Amended Complaint and in any event no such claim exists in federal law. *Albright v. Oliver*, 510 U.S. 266, 267, 114 S. Ct. 807, 810–11 (1994).

### III.

This court will examine each of Shipman's preserved claims in light of the district court's decision, applicable Rule 12(b)(6) standards, and, importantly, his exact allegations in the Third Amended Complaint, which are somewhat different from his assertions in this court.

No. 18-20155

**A. First Amendment Claim**

Shipman alleges that the Grimes County District Attorney Tuck McLain violated his First Amendment rights by seeking a grand jury indictment against him in retaliation for Shipman's counsel's publication of a blog post criticizing local law enforcement. The First Amendment prohibits government officials from taking adverse action against citizens in retaliation for engaging in protected speech. *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002). *Keenan* also holds that to prove actionable retaliation, the plaintiff must additionally surmount pleading the elements of common law malicious prosecution. *Id.* at 260. As noted above, Shipman's pleadings never undertook the burden of pleading facts to support malicious prosecution, nor could they because of his guilty plea.

Further, although Shipman's counsel criticized local law enforcement and McLain sought to indict Shipman afterward, free-speech retaliation claims under the First Amendment require the plaintiff to show more than that two events occurred in sequence. A plaintiff must allege some causal link between the events that, if proven, would establish a prima facie claim on the face of the complaint. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949. Shipman, however, relies wholly on conclusory statements and fails to allege facts creating a causal link between his lawyer's statements and the District Attorney's decision to seek an indictment. If anything, the Task Force's decision to seek a search warrant *before* Shipman's counsel published his statement cuts against Shipman's retaliatory-prosecution theory.

A final debilitating feature of this claim is that as the prosecutor, McClain is shielded by absolute immunity. *Hartman v. Moore,* 547 U.S. 250, 261–62, 126 S. Ct. 1695, 1704 (2006) (citation omitted).

In sum, because Shipman's First Amendment claim did not meet the *Iqbal* standard, the district court did not err in dismissing this claim.

6

No. 18-20155

## B. Fourteenth Amendment Claim

Shipman alleges that McLain violated his Fourteenth Amendment right to Equal Protection by selectively prosecuting him even though McLain allegedly knew that the charges against Shipman were meritless, and by refusing to "offer [Shipman] deferred adjudication." Shipman points to the favorable plea agreement entered by the trial court, in which an assistant DA dismissed organized crime charges against him in exchange for Shipman's pleading guilty to one Class C Misdemeanor count, as evidence that the District Attorney's indictment was meritless.

We agree with the district court's analysis of Shipman's pleading on this claim. Selective prosecution sounds as an equal protection violation of the Fourteenth Amendment and as such prohibits prosecutions based on "an unjustifiable standard such as race, religion, or other arbitrary classification." *United States v. Armstrong,* 517 U.S. 456, 464, 116 S. Ct. 1480, 1486 (1996) (internal quotation marks and citation omitted); *see also Beeler v. Rounsavall,* 328 F.3d 813, 817 (5th Cir. 2003). Shipman cannot claim membership in a protected class. To the extent Shipman alleged that the prosecutor picked him out to prevent his exercise of constitutional rights, *Bryan v. City of Madison,* 213 F.3d 267, 277 (5th Cir. 2003), he has offered no facts, as opposed to conclusory opinions, about McLain's motivation. And to be clear, we harbor doubts about the theory that would tie retaliation for actions taken by Shipman's attorney to a violation of Shipman's rights, but we assume arguendo that such a theory of retaliation is cognizable.

Of course, as has been noted, prosecutors enjoy absolute immunity from § 1983 suits based on all actions taken within the scope of their prosecutorial duties. *Kalina v. Fletcher,* 522 U.S. 118, 123–29, 118 S. Ct. 502, 506–09 (1997). Shipman argues that absolute immunity does not bar his Fourteenth Amendment claim because McLain "advised and assisted the [Task Force]

7

during the investigative phase" of this case. The defendants counter that absolute immunity applies to all of McLain's actions in "initiating, investigating, and pursuing a criminal prosecution."

This court need not speculate on the limit of prosecutorial immunity, however, because even if Shipman's position were correct and absolute immunity did not apply, this Fourteenth Amendment claim still fails for much the same reason as his First Amendment claim: he does not articulate sufficient facts that, taken as true, plausibly establish a selective-prosecution claim. Shipman does not make factual allegations to support his claim that McLain knew that the charges were allegedly meritless, other than pointing to the plea agreement he eventually accepted. Nor does he allege any facts that, taken as true, would establish a causal connection between McLain's actions and Shipman's characterization of McLain's motives. *See, e.g., Beeler,* 328 F.3d at 817 ("It must be shown that selective enforcement was deliberately based on an unjustifiable standard such as race, religion or other arbitrary classification.") (internal quotation marks and citation omitted).

Shipman also offers a stigma-plus infringement theory to support his Fourteenth Amendment claims. The only defendant Shipman associates with this claim by name is Sclider. Thus, the court's analysis of Shipman's claim will focus solely on Sclider's conduct. To prevail on a stigma-plus-infringement claim, a plaintiff must show that "a state actor has made concrete, false assertions of *wrongdoing on the part of the plaintiff." Blackburn v. City of Marshall*, 42 F.3d 925, 936 (5th Cir. 1995) (emphasis original) (citation omitted). Shipman's claim centers around statements Sclider made to a local television reporter after the raid, in which Sclider described the legal status of the vehicles seized in the raid under Texas law and said, "at this point we are going to have to find the rightful owner of these vehicles." Sclider merely provided an accurate summary of the law, however, and did not make any

No. 18-20155

concrete, false assertion that meets the standard set forth in *Blackburn.* The district court correctly dismissed Shipman's Fourteenth Amendment claims.

### C. Fourth Amendment Claims.

A significant portion of Shipman's claims stems from alleged violations of his Fourth Amendment rights. It is helpful to separate these claims into two categories: the claim alleging an unreasonable search and initial seizure of documents and vehicles from his autobody shop, and the claim alleging an unreasonable, sixteen-month continued seizure of his vehicles and business paperwork. The district court held that both categories were barred by *Heck v. Humphrey.*

*Heck* forbids a plaintiff who has been convicted of a crime from launching "a collateral attack on the conviction through the vehicle of a civil suit." *Heck,* 512 U.S. at 484, 114 S. Ct. at 2371 (internal quotation marks and citation omitted). Thus, this court has interpreted *Heck* to mean that "[w]hen a plaintiff alleges tort claims against his arresting officers, the district court must first consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *DeLeon v. City of Corpus Christi,* 488 F.3d 649, 652 (5th Cir. 2007) (quoting *Hainze v. Richards,* 207 F.3d 795, 798 (5th Cir. 2000)).[1]

---

[1] In *DeLeon,* this court clearly took the position that *Heck,* as viewed by Justice Scalia, is "foremost …a section 1983 decision, narrowing the reach of that civil-rights statute by reference to the law of tort in 1871." 488 F.3d at 654. Further, this court has extended *Heck,* in *DeLeon,* to a case involving deferred adjudication and to a person no longer in custody and unable to obtain habeas relief. *Randell v. Johnson,* 227 F.3d 300 (5th Cir. 2000). Both parties assume *Heck* could apply here even though Shipman's crime of conviction was punishable only by a fine and thus may not have placed him "in custody." *See* Tex. Penal Code Ann. § 12.23; *see also id.* § 12.03(c); *McClish v.* Nugent, 483 F.3d 1231, 1251 n.19 (11th Cir. 2007). They disagree only about whether *Heck*'s standards are met in this case. Accordingly, we have no occasion to consider, because Shipman did not raise the point, whether his conviction, which carries a fine but no potential for imprisonment, renders *Heck* inapplicable.

No. 18-20155

In this case, Shipman pled guilty to a single count of selling a vehicle without a proper license. Shipman's Fourth Amendment unreasonable search claim against Sclider alleges that the Task Force lacked probable cause to search his property and seize vehicles, but the Task Force's suspicion that Shipman was selling vehicles without proper title paperwork—a lesser offense to which he pled guilty—is precisely one of the reasons for which a search warrant was issued. In other words, Shipman's conviction for selling vehicles without proper paperwork is inextricably intertwined with his claim that the Task Force lacked probable cause to raid his vehicle auction. *Cf. Connors v. Graves,* 538 F.3d 373, 377 (5th Cir. 2008) ("Connors cannot prevail on his claim for invalid seizure unless he proves that the officers lacked probable cause.") (citation omitted). Thus, Shipman's Fourth Amendment claim against Sclider is barred by *Heck. Id.*[2]

In any event, Shipman's Fourth Amendment allegations fail because Sclider's affidavit demonstrated probable cause to believe that an unlicensed auction of vehicles without adequate paperwork was about to occur. "Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of the [action] are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Cuadra v. Houston Indep. Sch. Dist.,* 626 F.3d 808, 813 (5th Cir. 2010) (internal citation omitted). In addition to the investigative facts recited hereinabove, Sclider reported in his search warrant affidavit the actual complaint of a person who alleged that Shipman was selling vehicles without proper authorization.

---

[2] We do not hold that *Heck* bars a 1983 claim for every search and seizure that results in some ultimate criminal conviction. One can envision a situation where the scope of the search far exceeded the claim of probable cause or the eventual crime of conviction. *See, e.g., Butler v. Compton*, 482 F.3d 1277 (10th Cir. 2007). This is not such a case.

No. 18-20155

Shipman also alleges Fourth Amendment claims against Grimes County Sheriff Donald Sowell for refusing to return his vehicles and office paperwork for more than a year. This claim is distinct from his unreasonable-search claim because it challenges the ongoing detention of property that occurred after the search and, if actionable, does not necessarily impugn Shipman's conviction. We assume arguendo that *Heck* does not bar this claim. *See Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008) (holding that *Heck* does not bar claims for conduct that is "temporally and conceptually distinct" from the basis of the plaintiff's conviction).

Nevertheless, the unreasonable detention claim cannot survive the heightened pleading standards established by *Iqbal*. The vehicles in question were lawfully seized pursuant to a valid warrant and remained in law enforcement custody only until the criminal case was adjudicated.[3] Shipman argues that the trial court's dismissal of the most serious offenses against him proves that Sowell lacked probable cause to continue holding his vehicles after the raid. The Supreme Court, however, has held that courts should not "evaluate probable cause in hindsight, based on what a search does or does not turn up." *Florida v. Harris*, 568 U.S. 237, 249, 133 S. Ct. 1050, 1059 (2013) (citation omitted). The same principle must apply to criminal trials—the dismissal of some charges does not prove that a search or seizure was unreasonable when it occurred.

Because Shipman's allegations, taken as true, are barred by *Heck* or fail to show a plausible claim for improper seizure or unconstitutional detention,

---

[3] The plausibility of Shipman's unreasonable detention claim is further compromised by his apparent failure to formally move for the release of the seized vehicles during the period of their detention pursuant to Texas law. *Cf. In re Cornyn*, 27 S.W.3d 327, 333 (Tex. App. 2000) (holding that Chapter 18 of the Texas Code of Criminal Procedure provides procedures for parties who believe their property was seized unreasonably to seek relief from the magistrate who issued the search warrant).

the district court's dismissal of the Fourth Amendment claims is affirmed. Further, because Shipman's related claims against Montgomery County Sheriff Tommy Gage for failing to train and supervise his subordinates are predicated on the insufficient allegations against the search warrant and seizure, they also fail.

### D. State Law Claims

Shipman alleged a smattering of state law tort claims against the Defendants, which the district court dismissed with prejudice. Shipman has chosen to raise only his slander and tortious interference claims on appeal. Shipman alleges that Sclider "and other [Task Force] officers" committed slander and tortious interference when they contacted Shipman's customers and informed them that they may not need to make their payments on the vehicles because the vehicles might have been stolen. Because "other [Task Force] officers" is a vague description that does not specify any defendants individually, this court analyzes Shipman's tort claims as applied to Sclider only.

The district court dismissed the tort claims under the TTCA, which requires dismissal of a suit that the plaintiff could have brought against the government but instead "filed against a[] [government] employee . . . based on conduct within the general scope of [his] employment." TEX CIV. PRAC. & REM. CODE ANN. § 101.106(f); *see id.* § 101.001(5). An employee's conduct is within the general scope of his employment if there is "a connection between the [employee's] job duties and the alleged tortious conduct." *Wilkerson v. Univ. of N. Tex.*, 878 F.3d 147, 160 (5th Cir. 2017) (internal quotation marks and citation omitted). As alleged, Sclider informed Shipman's customers about the Task Force's suspicions as part of the Task Force's broader investigation into the legality of Shipman's business activities. Informing the purchasers of potentially stolen property about an ongoing investigation into the status of

that property and about the purchasers' rights during that investigation is a manifestly reasonable step for officers to take. Thus, Sclider's statements to Shipman's customers were connected to his job duties as commander of the Task Force. The district court's decision to dismiss Shipman's state law tort claims under the TTCA was therefore proper.

## IV.

The judgment of the district court is **AFFIRMED.**