United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 7, 2003**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 02-10360

———————————————

JON BEELER,

Plaintiff-Appellant,

versus

JOHN ROUNSAVALL, MARY GAYLE RAMSEY, and
THE CITY OF TERRELL, TEXAS,

Defendants-Appellees.

———————————————————————————

Appeal from the United States District Court
For the Northern District of Texas

———————————————————————————

Before BENAVIDES, STEWART, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

The issue on appeal is whether the district court erred in granting summary judgment in favor

of John Rounsavall ("Rounsavall"), City Secretary; Mary Gayle Ramsey ("Ramsey"), City Attorney;

and the City of Terrell, Texas, ("the City") on the appellant's "class of one" equal protection claim.

We affirm.

# I. FACTS AND PROCEEDINGS

Under the Texas Alcoholic Beverage Code ("the Code"), an operator of a convenience store must apply for a beer and wine permit ("permit") if beer and/or wine will be sold at the location. Tex. Alco. Bev. Code §§ 11.01(a), 11.31, 11.32. The Texas Alcoholic Beverage Commission ("TABC") has the discretionary authority to grant or refuse requested permits. *Id.* §§ 11.01(a), 11.43, 11.46.

Under the Code, incorporated cities and towns may regulate the sale of beer and wine. *Id.* §§ 109.31-33. Pursuant to this authority, the City passed two ordinances in 1984 and 1998, respectively, that established distance requirements for businesses selling alcoholic beverages. The first ordinance ("Ordinance 1345") prohibited the sale of beer and wine from any locations that were within 300 feet of a church, school, or other educational institution, and the second ordinance ("Ordinance 1939") restricted the sale of beer and wine within 1000 feet of a public school or other educational institution.

The practical effect of Ordinance 1939 was somewhat minimized by the Code's differential treatment of applications for new permits and applications to renew existing permits. *Id.* §§ 11.31, 11.32. Under the Code, businesses applying for permits only needed to satisfy the distance requirements in existence at the time of their original application. Under the Code's grandfather clause, all businesses that obtained their permits prior to the passage of Ordinance 1939 were deemed "to satisfy the distance requirements for all subsequent renewals of the . . . permit," even if this was not true as a factual matter. *Id.* § 109.59. Of course, businesses applying for their first permit after the passage of Ordinance 1939 were required to satisfy the distance requirements contained therein. *Id.* §§ 109.31-33, 109.59.

2

In 1990, Appellant Jon Beeler ("Beeler") purchased an ongoing business—a convenience store—at 307 Ninth Street in Terrell, Texas ("Location A"). Beeler did not own the building in which his business operated or the land upon which it was situated; instead, he rented the building from Grady Lawson ("Lawson"). When Beeler purchased the business, Location A already had a permit.

In December 1999, Beeler decided to relocate his business from Location A to 305 Ninth Street in Terrell, Texas ("Location B"). Location A and Location B were adjacent buildings. Whereas the TABC had issued permits for Location A in the past, no such permit had ever been issued for Location B.[1]

Under the Code, the City, through its City Secretary, must certify "whether the location or address given in the application is in a wet area and whether the sale of alcoholic beverages for which the permit is sought is prohibited by charter or ordinance." *Id.* § 11.37(b). On January 11, 2000, Beeler applied for a permit for Location B, and on or about the same day, the City certified that Beeler could sell beer and wine out of Location B.[2] On January 12, 2000, Beeler purchased the building located at Location B. Around the same time, Lawson found new tenants—Humberto and Ly Rodriguez ("the Rodriguezes")—to operate a convenience store at Location A.

Shortly after Beeler's purchase of the building at Location B, Lawson visited Rounsavall and Ramsey to question the City's certification of Beeler's application. Lawson believed that Location B had been denied a permit in the past.

---

[1] Based on rumors he had heard, Lawson believed that it was not possible to sell alcoholic beverages at Location B. Beeler contended that his employee attempted to confirm the veracity of these rumors in early 1998 by contacting Rounsavall, who allegedly stated that the issuance of a permit would not violate any City ordinances. However, there is no evidence in the record of such a conversation.

[2] The City provided Beeler with an official document entitled "Permit," which bore the signature of Rounsavall and noted the address of Location B (905 Ninth Street, Terrell, Texas 75160), the duration of the permit (one year), and the name of the establishment (Handy Mart #1). R. 249/100.

Subsequently, Rounsavall determined that the City's certification was in error, so he took the necessary steps to file a protest of his certification. Rounsavall attributed his flip-flop to the mistaken belief that a new address number had been assigned to Location A. According to his affidavit, Rounsavall had not understood that Beeler was changing locations. As a result, Beeler's application was put on hold, and the City attempted to ascertain whether to certify Beeler's application.

The City's determination was delayed by bureaucratic inertia, Ramsey's personal vacations and illnesses, failure to measure the relevant distances, and disagreements over whether Ordinance 1939 applied to day care facilities, private schools, and/or athletic facilities. On March 14, 2000, Rounsavall notified Beeler that the City was protesting his application pending a determination of compliance with the relevant municipal ordinances, including Ordinance 1939.

The next day, Beeler sought a declaratory judgment and injunction from the district court enjoining the City from enforcing Ordinance 1939, withholding its certification, and causing his application to be placed on hold. Shortly thereafter, the TABC considered Beeler's application and concluded that it could not approve it because the City withdrew its certification. As a result, Beeler's original action was nonsuited, and Beeler sought a writ of mandamus from the district court requiring the City and Rounsavall to certify his application. Beeler's second action was dismissed in late June 2000, but the next month, Rounsavall withdrew the City's letter of protest after determining that Location B satisfied the relevant municipal ordinances.

In August 2000, the City certified Beeler's application, and he received his permit. Subsequently, Beeler sold the store located at Location B.

The Rodriguezes also had difficulty obtaining a permit for their convenience store at Location A. On March 14, 2000, just before the Rodriguezes began operating their store, Lawson's attorney

4

wrote to Ramsey to protest the "delay and refusal" of the City to certify the Rodriguezes' application. Evidently, the City was considering whether Location A satisfied the distance requirements established by Ordinance 1939. Lawson's attorney asserted that the Code's grandfather clause applied to Location A because the Rodriguezes were operating the same type of store at a location for which permits had been issued in the past. On April 14, 2000, the Rodriguezes obtained a permit for their store at Location A.

On November 6, 2000, Beeler filed suit against Rounsavall, Ramsey, and the City (collectively, "the Defendants") in the district court, arguing that their actions deprived Beeler of equal protection in violation of the Fourteenth Amendment. The district court characterized Beeler's claim as a "class of one" equal protection claim that required two findings: (1) illegitimate animus or ill will on the part of the Defendants, and (2) similarly situated individuals were treated differently. The district court concluded that Beeler and the Rodriguezes were not similarly situated and that the Defendants' behavior, though reprehensible, did not rise to the level of illegitimate animus or ill will. For this reason, the district court granted summary judgment in favor of the Defendants.

## II. STANDARD OF REVIEW

This Court reviews a motion for summary judgment de novo. *St. Paul Guardian Ins. Co. v. Centrum GS Ltd.*, 283 F.3d 709, 712-13 (5th Cir. 2002). The purpose of summary judgment is to pierce the pleadings and assess the proof to determine if a genuine need for trial exists. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

# III. DISCUSSION

The instant dispute is not a straightforward equal protection claim involving a "class of one." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The instant dispute is more akin to the plaintiffs' claims in *Bryan v. City of Madison*, 213 F.3d 267, 276-77 (5th Cir. 2000), in which public officials repeatedly frustrated the plaintiff's plan to construct an apartment complex on land he contracted to purchase, and *Esmail v. Macrane*, 53 F.3d 176, 178-80 (7th Cir. 1995), in which public officials used their powers to delay and frustrate an applicant's efforts to obtain a liquor license. Like the plaintiff in *Bryan*, Beeler alleged that (1) the Defendants applied the municipal ordinances, including the distance requirements established by Ordinance 1939, unreasonably in his case by frustrating his application for a permit based on a failure to comply with those ordinances; and (2) the extraordinary process he faced, including the delays from March to August 2000, violated his equal protection rights. *Bryan*, 213 F.3d at 276.

"The first [claim] falls within the standard equal protection analysis. As a prerequisite to such a claim, the plaintiff must prove that similarly situated individuals were treated differently." *Id.* (citing *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999)). In order to satisfy this prerequisite, Beeler must demonstrate that: (1) Beeler and the Rodriguezes were similarly situated; and (2) Beeler and the Rodriguezes were treated differently.

First, the Code clearly distinguishes between applications for new permits and applications to renew existing permits. TEX. ALCO. BEV. CODE §§ 11.31, 11.32, 109.59. Permits were issued for Location A on a continual basis for more than a decade, but never for Location B. For this reason, the Rodriguezes' application was treated as one to renew an existing permit and Beeler's application as one for a new permit. Under the Code's grandfather clause, the distance requirements established

6

by Ordinance 1939 only applied to Beeler's application, not to the Rodriguezes' application. *Id.* §
109.59.

Beeler argues that he was similarly situated to the Rodriguezes because the two stores were located in adjacent buildings and sold the same basic items. However, the relevant criterion here is not the two stores' proximity or the similarity of their products. Instead, the relevant question is whether the two stores were similarly situated under the Code. The Code's differential treatment of businesses applying for their first permit and businesses applying to renew their permits indicates that Beeler and the Rodriguezes were not similarly situated. Whereas Beeler was applying for a new permit, the Rodriguezes were applying to renew an existing permit. Beeler did not cite any other parties applying for new permits; therefore, Beeler failed to satisfy the first element.

Second, there is no evidence that Beeler was treated any differently from the Rodriguezes. On March 14, 2000, Lawson's attorney wrote to Ramsey complaining about the City's "delay and refusal" to certify the Rodriguezes' application for a permit based on the failure of Location A to comply with the distance requirements contained in Ordinance 1939. Although the Rodriguezes received their permit before Beeler, the City appears to have treated the two parties in a similar manner by initially refusing to certify their applications and causing unnecessary delays. Therefore, Beeler failed to satisfy the second element.

The second claim is more properly characterized as an example of selective enforcement. *Bryan*, 213 F.3d at 277; *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 2000). "The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Allred's Produce*, 178 F.3d at 748 (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). "[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the

government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan*, 213 F.3d at 277. "[I]t must be shown that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Allred's Produce*, 178 F.3d at 748 (citing *Oyler*, 368 U.S. at 456).

Beeler's selective enforcement claim fails to satisfy this requirement. He has never alleged any improper motive by the Rounsavall, Ramsey, or the City. Indeed, Beeler offers no motive at all for the Defendants' actions.[3]

This Court stated that personal vindictiveness might be an improper motive in a selective enforcement case, but this Court has "never specifically addressed whether such a motive would be enough to support an equal protection claim without some other class-based discrimination." *Id.* at 277, n.18. The "text of the Equal Protection Clause, the history leading to its adoption, [and] a century of jurisprudence that has in the main interpreted the clause to prohibit only disparate treatment based upon group or class factors" suggests that personal vindictiveness by itself is insufficient as an improper motive in the absence of some other class- or group-based discrimination. Timothy Zick, *Angry White Males: The Equal Protection Clause and "Classes of One"*, 89 KY. L.J. 69, 75 (2000/2001). However, we need not address this issue here because Beeler has not provided any evidence of personal vindictiveness.

## IV. CONCLUSION

---

[3] In his Deposition, Beeler conceded that neither Rounsavall nor Ramsey ever expressed any hostility toward him.

8

Viewing the evidence in the light most favorable to the non-moving party, we conclude that Beeler has not provided any evidence of similarly situated individuals, of different treatment, or of improper motives on the part of the Defendants or Lawson. Having pierced the pleadings and assessed the proof to determine if a genuine need for trial exists, we conclude that there is no genuine issue as to any material fact, and Rounsavall, Ramsey, and the City are entitled to a judgment as a matter of law. The judgment of the district court is AFFIRMED.