NO. 07-08-0213-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

SEPTEMBER 11, 2008
______________________________

STACY L. CONNER, APPELLANT

V.

KENNETH CHERNUSHEK AND LOLA CHERNUSHEK, APPELLEES
_________________________________

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2007-540,901; HONORABLE RUBEN REYES, JUDGE
_______________________________
Before CAMPBELL and HANCOCK and PIRTLE, JJ.
                                                                ORDER
          On May 14, 2008, appellant Stacy L. Conner, acting pro se, filed his notice of appeal
from the trial court’s order granting summary judgment in favor of appellees Kenneth and
Lola Chernushek. By letter dated May 20, 2008, Conner was advised by the clerk of this
Court that the filing fee had not been received. Tex. R. App. P. 5. Conner was directed
to pay the filing fee by May 30, 2008, and was advised that failure to pay the filing fee
could result in the dismissal of the appeal. See Tex. R. App. P. 42.3. On July 7, 2008,
Conner filed with this Court a document entitled “Motion to Proceed in Forma Pauperis.” 
 
          The Texas Rules of Appellate Procedure provide that a party to an appeal who
cannot pay the costs may proceed without advance payments of costs if (1) the party files
an affidavit of indigence in compliance with the rule; (2) the claim of indigence is not
contested or, if contested, the contest is not sustained by written order; and (3) the party
timely files a notice of appeal. Tex. R. App. P. 20.1(a). When the party is the appellant in
an appeal from a trial court ruling, the party “must file the affidavit of indigence in the trial
court with or before the notice of appeal.” Tex. R. App. P. 20.1(c)(1). And, “[i]f the affidavit
of indigence is filed with the trial court clerk under (c)(1), the clerk must [then] promptly
send a copy of [it] to the appropriate court reporter.” Tex. R. App. P. 20.1(d)(1). That court
reporter, as well as the clerk and any party, then has ten days “after the date when the
affidavit was filed . . . in the trial court” to contest the affidavit. Tex. R. App. P. 20.1(e). 
          Here, Conner did not file his affidavit in the trial court, nor was it filed with or before
the notice of appeal. Thus, that clerk has had no opportunity to forward it to the reporter
or litigants for review and possible contest in the manner contemplated by the rule. In a
similar situation, we recently found the appropriate procedure in these circumstances is to
provide the clerk, reporter and litigants the opportunity the rule anticipates they will have
to contest an appellant’s assertion of indigence. See Higgins v. Randall County Sheriff’s
Office, No. 07-05-0004-CV, ___ WL ___ (Tex.App.–Amarillo July 15, 2008) (order), citing
Higgins v. Randall County Sheriff’s Office, ___ S.W.3d ___, No. 06-0917, 2008 WL
2069834 (Tex. May 16, 2008). We will follow the same procedure in this appeal. 
          Accordingly, the clerk of this Court is directed to forward a copy of Conner’s “Motion
to Proceed in Forma Pauperis” to the trial court clerk and court reporter as well as to all
parties of record and inform each that they have the right to contest the validity of that
affidavit and Conner’s claim of indigence, if they so choose. Tex. R. App. P. 20.1(e). Their
contest, if any, must be filed in writing with the clerk of this Court on or before October 13,
2008. If a contest is so received, then the cause will be abated and remanded to the trial
court for hearing in accordance with Rule of Appellate Procedure 20.1(h)(4) and (i). 
          It is so ordered.
 
                                                                           Per Curiam 
 
 



enuine questions of fact on her malicious
prosecution claims; (3) that it erred in holding there were no genuine questions of fact on
her federal claims under Title 42, Section 1983 of the United States Code; and (4) that the
court's judgment cannot be supported on the basis of immunity. 

 The City has submitted a brief presenting three arguments supporting summary
judgment for it on appellant's Section 1983 claims. Elrod and Fletcher have filed a joint
brief arguing the record establishes there are no genuine questions of fact on appellant's
malicious prosecution claims or her Section 1983 claims. They also argue the judgment
is supportable on the basis of official immunity and qualified immunity. 

STANDARD OF REVIEW

 The standards we must apply in reviewing a summary judgment are so well
established that a detailed recitation of those standards is unnecessary here. It is
sufficient to note that a movant bears the burden to establish that there are no genuine
issues of material fact and that the movant is entitled to judgment as a matter of law. Nixon
v. Mr. Property Management Co., 690 S.W.2d at 546, 548 (Tex. 1985). We must take
evidence favorable to the non-movant as true and indulge in every reasonable inference
in favor of the non-movant. Id. 

 Rule of Civil Procedure 166a(i) allows a party to seek summary judgment on the
basis that there is no evidence supporting an essential element of a claim or defense on
which the opposing party has the burden of proof. Because a no-evidence summary
judgment is essentially the same as a pretrial directed verdict, we apply the same legal
sufficiency standard to both. King Ranch, Inc. v. Chapman, 46 Tex.Sup.Ct.J. 1093 (2003). 
The proper inquiry is whether the non-movant produced any probative evidence to raise
a material fact issue. There is no evidence when (a) there is a complete absence of
evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove
a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes
the opposite of the vital fact. Id. If the non-movant presents more than a scintilla of
probative evidence to raise a genuine material fact issue, summary judgment should not
have been granted. Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). More
than a scintilla of evidence exists when the evidence rises to a level such that reasonable
and fair-minded people could differ in their conclusions. Id. 


COMMON LAW MALICIOUS PROSECUTION

 We begin with appellant's second issue, which assigns error to the trial court's
finding that Elrod and Fletcher were entitled to summary judgment on her claims for
malicious prosecution. The parties agree that the opinion in Richey v. Brookshire Grocery
Co., 952 S.W.2d 515 (Tex. 1997), correctly sets out the elements of a claim for malicious
prosecution. The elements are: the initiation of a criminal prosecution against the plaintiff;
by the actions of the defendant; termination of that prosecution in the plaintiff's favor; the
plaintiff's innocence; the absence of probable cause for the prosecution; malice in initiating
the prosecution; and damage to the plaintiff. Id. at 517. Elrod and Fletcher's no-evidence
motions for summary judgment asserted there is no evidence on the elements of lack of
probable cause and malice.

 In Richey, the court reaffirmed the definition of probable cause in the malicious
prosecution context as "the existence of such facts and circumstances as would excite
belief in a reasonable mind, acting on the facts within the knowledge of the prosecutor
[complainant], that the person charged was guilty of the crime for which he was
prosecuted." Id. at 517 (quoting from Akin v. Dahl, 661 S.W.2d 917, 921 (Tex. 1983)). 
Restated, the probable-cause determination asks whether a reasonable person would
believe that a crime had been committed given the facts as the complainant honestly and
reasonably believed them to be. Id.

 Malice is defined as ill will, evil motive, gross indifference, or reckless disregard of
the rights of others. King v. Graham, 47 S.W.3d 595, 608 (Tex.App.--San Antonio 2001,
no pet.). It may be established by direct or circumstantial evidence. Thrift v. Hubbard,
974 S.W.2d 70, 80 (Tex.App.--San Antonio 1998, pet. denied). Appellant cites Bass v.
Metzger, 569 S.W.2d 917 (Tex.Civ.App.-Corpus Christi 1978, writ ref'd n.r.e.), for the
proposition that malice can be inferred from the initiation of a prosecution without probable
cause. See also King, 47 S.W.3d at 608. Fletcher and Elrod counter that Biering v. First
National Bank, 7 S.W. 90 (Tex. 1888), held the "two elements are distinct." In Biering, the
court actually held that lack of probable cause could not be inferred from proof of malice,
Id. at 92, but noted that malice may be inferred from proof that there was no probable
cause. Id. 

 With respect to probable cause, a malicious prosecution case begins with the
presumption that the defendant has acted reasonably and in good faith and had probable
cause to initiate the prosecution. Richey, 952 S.W.2d at 517; Akin, 661 S.W.2d at 920. The
plaintiff's initial burden on that element is to produce evidence that "the motives, grounds,
beliefs, and other evidence" on which the defendant acted did not constitute probable
cause. Id. Faced with Fletcher and Elrod's no-evidence motion for summary judgment on
the absence of probable cause element, then, appellant was required to point out evidence
to rebut that initial presumption. Significantly, although appellant argues the general
proposition that probable cause was lacking for her prosecution pursuant to the two
complaints, she does not expressly assert that Fletcher or Elrod did not act on the basis
of the flyer Fletcher found on his windshield, nor does she expressly challenge the
sufficiency of the flyer to constitute probable cause for either complaint. (1) 

 With regard to the prosecution for distributing or scattering handbills, appellant
argues that the complaint was not based on eyewitness evidence that she placed the flyers
on cars. However she does not explain, nor does it appear to us, how the absence of an
eyewitness is evidence of the lack of probable cause. Having carefully examined the
summary judgment record, we find no evidence to support this element of appellant's
claims for malicious prosecution arising from the handbill prosecution.

 With regard to the prosecution for the zoning violation, appellant relies on a portion
of Elrod's deposition testimony as evidence that the prosecution was brought without
probable cause. The deposition testimony at issue consists of the following passage:

 Question: Did you ever obtain a search warrant at any time to go to the
Gunnels' home after you filed that complaint?


 Elrod: In incidents like this, it's kind of hard to obtain a search warrant.


 Question: Why is that, sir?


 Elrod: Because you don't know what is in there and you don't have proof of
what is in there, totally. All you've got is guessing and suspicious [sic]. And
the flier that she put out led to suspicious [sic] that there was, and that's not
grounds for - my understanding, is not grounds for a search warrant.


The gist of appellant's argument is that Elrod's statement is an admission he had only a
suspicion that appellant had violated the zoning ordinance and therefore did not have
probable cause to file the complaint alleging she did so.

 We cannot agree that Elrod's response to the question why it's hard "in incidents
like this" to obtain a search warrant amounts to such an admission, nor do we see his
statement as evidence of the absence of probable cause. To begin with, the first question
in the quoted exchange inquired of Elrod whether he had obtained a search warrant after
he filed the complaint. Events occurring after Elrod filed the complaint are not relevant to
the issue of his probable cause to initiate the prosecution of appellant. Akin, 661 S.W.2d
at 920 ("It is the events prior to the institution of the proceedings which must be examined,
and only those events, to determine if the defendants had probable cause to act.")

 Assuming, though, we can infer that Elrod's response to the second question
reflects his beliefs about the availability of a search warrant at the time he filed the
complaint, we still cannot give his statement the significance appellant attributes to it. In
its context, Elrod's statement, reflecting his legal conclusion that he would not have been
able to obtain a search warrant because it would have been based on "guessing and
suspicions," would not lead a fair-minded person to conclude either that he subjectively
did not believe appellant was operating a flower shop in violation of the ordinance or that
his belief was not objectively reasonable. See Richey, 952 S.W.2d at 518-19. His
response to the question does not, as appellant urges, amount to an admission by Elrod
that he had only a suspicion appellant was operating a flower shop in her home, and even
viewed in the light most favorable to appellant, it represents no more than a scintilla of
evidence that probable cause was lacking. 

 Appellant also emphasizes what she sees as a contradiction between Elrod's
testimony on deposition that he performed no investigation before making the
determination that appellant was operating a business in violation of the zoning ordinance
and his statement in his affidavit that he "confirmed by his own investigative efforts" that
appellant occupied the single-family residence at 1415 East Broadway. Again, though, in
context, the contradiction fades. At deposition, Elrod was asked, "Did you go out and do
any investigation before you made [the determination that appellant was violating the
ordinance]?" After his negative response, he was asked, "No phone calls, no physical
drive-bys, call, talk to her, or anything?" He again gave a negative response. The
responses do not contradict Elrod's statement in his affidavit. The differences between the
responses and the affidavit do not raise a genuine issue of material fact concerning the
presence of probable cause. 

 Appellant has further asserted that there are such inconsistencies and conflicts
between the evidence given by Elrod and that given by Fletcher, and between the
statements made by each in his deposition testimony and those contained in his affidavit
as to raise a fact issue concerning the lack of probable cause. Having reviewed the
deposition testimony that was before the trial court and the affidavits of both defendants,
we do not find inconsistencies or conflicts in the summary judgment evidence sufficient to
raise a genuine issue of material fact concerning the probable cause element. 

 Appellant's only argument addressing summary judgment for Fletcher on the lack
of probable cause element appears to be that Fletcher did not conduct any investigation
beyond the flyer itself. We cannot agree that is evidence he lacked probable cause.
Again, appellant does not contend that the information in the flyer was insufficient to meet
the standard for probable cause set out in case law. 

 Because the summary judgment record supports a finding that there is no evidence
supporting an essential element of appellant's claims for malicious prosecution, that of the
absence of probable cause for the prosecution, the trial court did not err in granting
Fletcher and Elrod summary judgment on those claims. Tex.R.Civ.Proc. 166a(i) (summary
judgment is proper when there is no evidence of "one or more essential elements.") We
overrule appellant's second issue.

SECTION 1983 CLAIMS

 We turn next to appellant's third issue, in which she asserts that the trial court's
grant of summary judgment on her claims for deprivation of civil rights asserted under
Section 1983 was error. Those claims, asserted against the City, Elrod and Fletcher,
contended that pursuit of the two charges against her constituted both malicious
prosecution in violation of her Fourth Amendment rights and selective prosecution in
violation of her right to equal protection of the law under the Fourteenth Amendment. (2)

 Section 1983 provides a civil cause of action against any person acting under color
of state law who deprives another of a right protected by the federal constitution or laws. 
The U. S. Supreme Court has held that a municipality is a "person" under the statute, but
its liability must be based on its own conduct, and cannot be vicarious arising from conduct
of its employees. Monell v. Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56
L.Ed.2d 611 (1978). Municipal liability for deprivations of constitutional rights must flow
from an established policy or custom of the municipality. Leatherman v. Tarrant Co.
Narcotics Intelligence Unit, 507 U.S. 163, 166, 122 L.Ed.2d 517, 113 S.Ct. 1160 (1993). 

 Appellant does not allege that her prosecution was pursuant to a formal policy of
the City. An official policy for which a municipality may be liable need not be a formally
adopted one. Official policy can also be established by evidence of: 


 A persistent, widespread practice of city officials or employees, which,
although not authorized by officially adopted and promulgated policy, is so
common and well settled as to constitute a custom that fairly represents
municipal policy. Actual or constructive knowledge of such custom must be
attributable to the governing body of the municipality or to an official to whom
that body had delegated policy-making authority.


Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992). 

 The official policy appellant seeks to establish was that the city attorney would try
all cases filed in municipal court regardless of the merits of the case. As evidence of this
policy, she cites the deposition testimony of the city attorney, William McGowan, that he
did not consider dismissing the complaints against appellant, even after one trial resulted
in a hung jury, and his testimony that he tried all cases, "win, lose or draw." 

 Appellant characterizes this testimony as evidence that the city attorney tries all
cases "regardless of his chances of success." Based on this characterization of
McGowan's testimony, and the statutory provision that it is the duty of prosecutors, "not
to convict, but to see that justice is done," Tex.Code Crim.Proc. Art. 2.01 (Vernon Supp.
2003), appellant argues this is evidence of "the type of 'serious incompetence'" (3) for which
the remedy created by Section 1983 was established. 

 Although appellant points to no evidence that the governing body of the City of
Brownfield, or any official to whom the City had delegated policy-making authority, had
knowledge of the city attorney's policy, nor to any evidence that the City's governing body
had delegated policy-making authority to the city attorney, for purposes of this discussion
we will assume here, arguendo, that the city attorney is the type of policy-maker whose
decisions and practices with respect to trial of cases in municipal court can be said to be
the actions of the City of Brownfield. See Pembaur v. City of Cincinnati, 475 U.S. 469, 106
S.Ct. 1292, 89 L.Ed.2d 452 (1986). Appellant asserts that, by virtue of the city attorney's
long tenure, the practice of trying all cases was so persistent and widespread as to fairly
represent municipal policy. Appellant states in her brief that the city attorney has
maintained the policy "for his entire tenure of over twenty years." Although we see no
evidence in the record before us to support the statement, (4) again, for purposes of this
discussion we will assume, arguendo, that there is summary judgment evidence of a policy
of the City to prosecute all municipal court cases to trial. 

 Even assuming the existence of such a policy, however, it did not give rise to a
violation of appellant's constitutional rights. To the degree that appellant contends that
the city attorney's testimony is evidence that she was prosecuted maliciously, the
contention must fail. "Malicious prosecution can be a constitutional violation . . . only if all
its common law elements are established." Castellano v. Fragozo, 311 F.3d 689, 698-99
(5th Cir. 2002), citing Izen, 256 F.3d at 327. The elements of the constitutional tort of
malicious prosecution under Section 1983 are the same as those under state law. To
establish her malicious prosecution claim against the City under Section 1983, therefore,
appellant must establish the same elements as are required for her malicious prosecution
claims against Elrod and Fletcher under Texas law. Castellano, 311 F.3d at 699. We
previously have concluded that appellant has pointed out no evidence that Elrod and
Fletcher lacked probable cause for their initiation of appellant's prosecution. Nor is the city
attorney's policy evidence of a lack of probable cause for appellant's prosecution. 

 Appellant asserts that the City policy was to try all municipal court cases filed
"despite the merits of the particular case." She further describes the practice as one of
prosecuting all cases to trial "regardless of the facts or lack of probable cause," in violation
of the prosecutor's duty under the Code of Criminal Procedure. But the city attorney did
not testify that he tried cases in which the facts did not support prosecution or in which
probable cause was lacking. Nor does appellant cite us to other summary judgment
evidence supporting such a conclusion. We are not pointed to evidence of the nature or
number of other cases the city attorney has taken to trial, the evidence presented in such
cases, or their outcomes. On this record, the city attorney's testimony falls considerably
short of evidence of a City custom, practice or policy of prosecuting municipal court cases
without probable cause. 

 Because, as noted, appellant was required to establish the same elements for her
Section 1983 malicious prosecution claims against Elrod and Fletcher as for her common-law malicious prosecution claims against them, Castellano, 311 F.3d at 699, our
conclusion that appellant has pointed out no evidence of the lack of probable cause for her
prosecution disposes of her Section 1983 claims against them as well. Richey, 952 S.W.
2d at 517. The trial court's grant of summary judgment on appellant's Section 1983
malicious prosecution claims was not error.

 Appellant focuses her Section 1983 claims alleging deprivation of equal protection
of the law through selective prosecution on the actions of Fletcher and Elrod. As with any
equal protection claim, to succeed appellant must demonstrate first that she and another
person or class were similarly situated, (5) and secondly, that she was treated differently. 
Beeler v. Rounsavall, 328 F.3d 813 (5th Cir. 2003).

 With regard to the handbill prosecution, appellant argues she is similarly situated
to businesses that had advertised with flyers placed on cars. The summary judgment
record contains evidence that three retail businesses had engaged in such advertising, but
each had been warned that the practice violated a city ordinance rather than being
prosecuted. Fletcher and Elrod seek to distinguish those instances on the basis that those
businesses were located in commercially zoned districts. This distinction may be relevant
in considering whether there was a basis for disparate treatment but, because the
ordinance does not recognize this distinction, we find there is summary judgment evidence
that appellant and the other three businesses were similarly situated under the ordinance. 

 With regard to the zoning prosecution, appellant contends she is similarly situated
to city residents who conduct garage sales in a residential district, and others who conduct
businesses from their homes, including Fletcher and Elrod. She argues that her sales
were indistinguishable from garage sales because both are periodic or irregular rather
than continuous. However, she does not identify any summary judgment evidence
supporting the assertion that her sales were not continuous. The only relevant evidence
appears to be the limited period for which the prices on the flyer were valid and the
language of the flyer referring to the annual school homecoming event. Indulging
reasonable inferences in her favor, we cannot say, though, that there is no evidence
appellant's activities were similar to garage sales. 

 The evidence of business conducted in Fletcher's home was that his wife had baked
and sold cakes. Fletcher points to evidence that this business activity involved only a few
sales, none of them in recent years. There was also evidence that Elrod sells ammunition
reloaded in his home. He relies on evidence that the ammunition was not sold at the
house and he did not advertise. Finally, there was also summary judgment evidence that
Elrod's wife and daughters operated a "radio telephone answering service" from their 
home. Appellees' brief does not offer any distinction between that activity and appellant's. 
Again, indulging reasonable inferences in her favor, the summary judgment evidence does
not conclusively establish that appellant was not similarly situated to others who conducted
commercial activities in residential districts. There is no evidence of other municipal court
prosecutions under the zoning ordinance. 

 The mere failure to prosecute others similarly situated, though, is not sufficient to
show selective prosecution violative of equal protection. U.S. v. Greene, 697 F.2d 1229,
1234 (5th Cir. 1983), cert. denied, 463 U.S. 1210 (1983); Roise v. State, 7 S.W.3d 225,
243 (Tex.App.--Austin 1999, pet. ref'd). To establish her claim of selective prosecution,
appellant must further establish that her different treatment was invidious, that is,
motivated by improper considerations such as race, religion, the interference with exercise
of a constitutional right, or other arbitrary classification. Beeler, 328 F.3d at 817, see also
Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); Greene, 697 F.2d at
1234. To avoid summary judgment appellant must show a genuine question of fact on
whether Elrod and Fletcher's decision to prosecute was deliberately based on such an
unjustifiable standard. See Oyler, 368 U.S. at 456 (selective enforcement violative of equal
protection is that "deliberately based upon an unjustifiable standard such as race, religion
or other arbitrary classification.") 

 We disagree with Fletcher and Elrod's contention that appellant must show the
decision to prosecute was based on race, religion, or exercise of constitutional rights. That
contention is based on a statement in Greene, 697 F.2d at 1234, listing those as
impermissible considerations in the decision to prosecute. However those factors are not
exclusive. As noted, in Beeler the Fifth Circuit recognized a claim of selective prosecution
can be based on an "arbitrary classification." 328 F.3d at 817. See also, e.g., Hayden v.
Grayson, 134 F.3d 449, 453 n.3 (1st Cir. 1998), citing Wayte v. United States, 470 U.S.
598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985).

 But appellant fails to cite any evidence that the decision to prosecute her in either
case was based on such an impermissible ground. Her first amended petition alleged the
prosecutions were motivated by the exercise of first amendment rights by her and her
father. Appellant refers us to no evidence in the record supporting that pleading and she
does not present that argument on appeal. Her assertions that others engaging in similar
practices were not prosecuted and that others were let off with a warning are simply
restatements of the argument that she has been treated differently. 

 Taking appellant's contention that she is the only person who has been prosecuted
for violations of these ordinances as true for purposes of this summary judgment analysis,
that fact may establish that appellant has been treated differently, but it is not evidence
that she has been treated differently for an impermissible reason. Nor is the failure of Elrod
and Fletcher to conduct any investigation beyond the flyer such evidence, nor is the
presence of Elrod's and Fletcher's names among those who have not been prosecuted for
commercial activity in residential areas. 

 The record supports a finding that there is no summary judgment evidence that any
differential treatment of appellant in enforcement of the city ordinances was invidious in
that it arose from an arbitrary or otherwise impermissible classification. See Greene, 697
F.2d at 1234. Because of the absence of any evidence on an indispensable element of
appellant's claims for selective prosecution, the trial court did not err in granting summary
judgment for Fletcher and Elrod on those claims. 

 Nor does the record contain evidence of a City policy giving rise to a claim that
appellant was selectively prosecuted. As noted, the official policy on which appellant relies
for her Section 1983 claims against the City is the city attorney's policy of bringing to trial
all municipal court cases presented to him for prosecution. Such a policy cannot form the
basis for a selective prosecution claim against the City. The existence of such a policy
obviously does not support a contention that the city attorney's actions in taking appellant
to trial on the complaints against her were "selective" or had the effect of treating her
differently than others similarly situated. To the contrary, if the city attorney's testimony
represents City policy, appellant was treated like others who were cited by complaint.
Moreover, appellant points to no evidence that any action taken pursuant to the city
attorney's policy was taken because of an arbitrary or otherwise impermissible
classification of her. We find the trial court properly granted summary judgment for the City
of Brownfield on appellant's selective prosecution claims against it. 

 Having concluded that the trial court did not err in granting summary judgment on
appellant's Section 1983 claims against appellees, we overrule appellant's third issue. 

CONCLUSION

 Our dispositions of appellant's second and third issues are dispositive of her claims
against appellees. Except to the degree that we have considered and rejected appellant's
assertions that the affidavits of Elrod and Fletcher created material questions of fact, we
need not address her first issue, nor need we address her fourth issue challenging
appellees' entitlement to summary judgment on the basis of immunity. The judgment of
the trial court is affirmed.

 James T. Campbell

 Justice


1. The handbill ordinance declared it unlawful to "distribute or scatter any kind of
literature, circulars, handbills or any kind of advertisements or loose paper upon the
streets of the city." It is uncontroverted in this litigation that the flyer was an advertisement
governed by the ordinance.
2. See generally Lansdale v. Tyler Junior College, 470 F.2d 659 (5th Cir. 1972)
(affirming injunction under Section 1983 for deprivation of equal protection); Izen v.
Catalina, 256 F.3d 324, 327-28 (5th Cir. 2001) (applying Fourth Amendment right to be free
from malicious prosecution). The City has not challenged the trial court's failure to grant
its special exceptions so we assume, arguendo, that appellant's petition is sufficient to
state a cause of action against it under Rule of Civil Procedure 47. 

3. This language is drawn from appellant's brief.
4. Because of the emphasis appellant places on the city attorney's testimony, we
reproduce the following exchange from his deposition testimony: 


 Q: Was there any consideration after you heard what they told you and the
evidence you had of suggesting a dismissal in this matter, one or more of
them, or not trying it?

 A: No. I try all. [. . .] I try all cases. Win, lose or draw. . . . 

 Q: Yes, sir. Through your term as City Attorney? There was no additional
evidence sought or obtained prior to your going to trial that morning?

 A: I don't remember.

 Q: What was the ultimate outcome of your first jury trial on these first two
complaints?

 A: I think she was found not guilty of the littering[,] and the jury hung on the
business.

 Q: Okay. And was a decision made if at all about whether to retry the hung
jury complaint?

 A: There never was a real question in my mind that it's still a complaint, and
I'm going to try it.

 Q: Okay.

 A: I think that it's my duty, that was my duty as the City attorney was to
present [the case].
5. The parties do not cite any authority discussing whether the determination that a
plaintiff asserting disparate treatment is similarly situated to others is a question of fact or
law. They implicitly view the question as one of fact and we will analyze the issues
presented on that basis.