# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 2, 2022
Lyle W. Cayce
Clerk

No. 21-51033

Kiolbassa Provision Company, Incorporated,

*Plaintiff—Appellant*,

*versus*

Travelers Property Casualty Company of America,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:20-CV-507

Before Davis, Elrod, and Haynes, *Circuit Judges*.

Per Curiam:*

Appellant Kiolbassa Provision Company ("Kiolbassa") operates a smoked meat business out of San Antonio, Texas, where it keeps its offices, production space, and a warehouse for storage. Given the nature of its business, Kiolbassa purchased an Equipment Breakdown Policy (the "Policy") from Travelers Property Casualty Company of America

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-51033

("Travelers") to cover damage to perishable goods when the damage is caused by a malfunctioning of "Covered Equipment" on Kiolbassa's premises. Kiolbassa also purchased another policy, the "Cargo Policy," from a related but separate corporate entity, The Travelers Lloyds Insurance Company. This second policy provides similar coverage for perishable goods when damaged during transportation. Kiolbassa also brought a claim under the Cargo Policy (although the parties agree on neither the exact details of how this claim was brought nor its relevance).

In August 2019, Kiolbassa ran out of storage space in its warehouse and loaded 49,016 pounds of organic beef trim onto a "reefer trailer" (a trailer with an attached refrigeration unit) located on its premises. The refrigeration unit malfunctioned; the beef spoiled; and Kiolbassa lost about $167,000 worth of product. Kiolbassa then filed an insurance claim under both the Cargo Policy and the Equipment Breakdown Policy.

Both claims were denied. Pertinent here, Travelers denied coverage under the Equipment Breakdown Policy because the refrigeration unit was mounted on the reefer trailer, which (Travelers argues) does not meet the definition of "Covered Equipment" in the Policy. Kiolbassa sued for its denial of coverage under only that policy, which insures damage to "Covered Property" caused by a "Breakdown" of "Covered Equipment" on "Covered Premises."

Travelers does not dispute that the beef trim is "Covered Property"; that the damage occurred due to a "Breakdown" of the refrigeration unit; and that the unit was located on "Covered Premises." The dispute therefore centers on whether the refrigeration unit is "Covered Equipment." In defining the term "Covered Equipment," the Policy states that it "does not mean" any equipment that is "mounted on or used solely with any vehicle." The refrigeration unit was "mounted on or used solely with" the reefer

No. 21-51033

trailer.  Travelers argues that the reefer trailer is a vehicle, making its denial of coverage appropriate.  Kiolbassa, on the other hand, argues that the reefer trailer is not a vehicle because, at the time of spoilage, the trailer was not able to "move on its own"—it was not attached to a semi-truck and was therefore stationary.

The district court agreed with Travelers, accepting a magistrate judge's report and recommendation that granted summary judgment in Travelers' favor.  Kiolbassa timely appealed.  Their case turns on one question: is a reefer trailer a vehicle under the relevant policy?  We have determined that the answer is yes—under the Equipment Breakdown Policy, a reefer trailer *is* a vehicle—and AFFIRM.

## I. Jurisdiction & Standard of Review

This case was properly removed to federal court under 28 U.S.C. § 1441, with the district court having jurisdiction under 28 U.S.C. § 1332. Because the grant of summary judgment on all claims is a final decision, we have appellate jurisdiction under 28 U.S.C. § 1291.  *See Ardoin v. J. Ray McDermott & Co.*, 641 F.2d 277, 278 (5th Cir. Unit A Mar. 1981).

We review the grant of summary judgment de novo.  S*mith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016).  A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Beeler v. Rounsavall*, 328 F.3d 813, 816 (5th Cir. 2003).  Facts, of course, are viewed in the light most favorable to the non-moving party.  *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

As to the Policy, we apply its provisions using Texas substantive law on contract interpretation.  *See Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001) ("Insurance policies are contracts.  In diversity cases such as this one, we apply state law rules of construction."

No. 21-51033

(citation omitted)); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (per curiam) ("We have consistently instructed that Texas courts are to construe insurance policies using ordinary rules of contract interpretation." (internal quotation marks and citation omitted)).

## II. Discussion

The relevant portions of the Policy are located in a form titled "EnergyMax 21." Section A of the EnergyMax 21 Form discusses coverage and provides, in relevant part, the following:

> We will pay for . . . . [s]poilage damage to "Perishable Goods" that is caused by or results from an interruption in utility services that is the direct result of a "Breakdown" to "Covered Equipment" owned, operated or controlled by a private or public utility, landlord or other supplier with whom you have a contract to provide you with any of the following services: air conditioning, communication services, electric power, gas, heating, refrigeration, steam, water or waste treatment.

Section F provides contractual definitions, defining "Covered Equipment" as follows:

> "Covered Equipment" means any: . . . electrical or mechanical equipment that is used in the generation, transmission or utilization of energy. . . . "Covered Equipment" does not mean any: . . . [v]ehicle, aircraft, self-propelled equipment or floating vessel, including any "Covered Equipment" mounted on or used solely with any vehicle, aircraft, self-propelled equipment or floating vessel.

The term "vehicle" is undefined.

Under Texas law, undefined policy terms must be given their "common, ordinary meaning," which is determined with the aid of dictionaries, *Anadarko Petroleum Corp. v. Hous. Cas. Co.*, 573 S.W.3d 187, 192 (Tex. 2019); *see Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011), with those

No. 21-51033

terms read "context[ually] and in light of the rules of grammar and common usage," *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).

The reefer trailer at issue here falls plainly within the ordinary meaning of the term "vehicle." Consulting Black's Law Dictionary, the term "vehicle" means: (1) "An instrument of transportation or conveyance"; or (2) "Any conveyance used in transporting passengers or things by land, water, or air." *Vehicle*, Black's Law Dictionary 1788 (10th ed. 2014). Other dictionaries provide very similar definitions. *See, e.g.*, *Vehicle*, Merriam-Webster, https://www.merriam-webster.com/dictionary/vehicle (last visited May 16, 2022) (defining "vehicle" as "a means of carrying or transporting something" and listing "motor vehicle" and "a piece of mechanized equipment" as two separate subcategories); *Green v. Life Ins. Co. of N. Am.*, 754 F.3d 324, 332 (5th Cir. 2014) (citing Webster's Third New International Dictionary, which defines "vehicle" as "a means of carrying or transporting something").

Kiolbassa does not contest that the reefer trailer is used to transport cargo—its Vice President of Organizational Development and Finance testified as much:

> Q: How does the final product . . . reach the big box retailers or other retailers to whom you are selling it?
>
> A: It would be stored onto a trailer—whether ours that we're leasing or a third party—and transported directly to their warehouse.
>
> Q: And when you say a trailer, do you mean a reefer trailer so that it is refrigerated?
>
> A: Yes.

To be ambiguous, there must be "two or more reasonable interpretations." *Nat'l Union Fire Ins. Co. v. CI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995). But Kiolbassa does not supply a single dictionary (or similar) definition for

No. 21-51033

"vehicle" in its briefing to this court that would support its position, even though "[t]he insured bears the initial burden of showing that the claim against her is potentially within the insurance policy's scope of coverage." *Harken Expl. Co.*, 261 F.3d at 471.[1]

Instead, Kiolbassa argues that the dictionary definitions are unreasonable in light of the Policy and that those definitions should be limited to a conveyance that can move on its own. We disagree. First, that limitation is not consistent with the common understanding of the word "vehicle." Self-propulsion is not a vehicle's defining feature, and whether it can fulfill that function at the time in question is irrelevant to its definition or classification. Second, additional contextual clues point to the reefer trailer being a vehicle: the Texas Department of Transportation considers trailers to be vehicles, TEX. TRANSP. CODE ANN. § 621.001(9); the trailer was registered with the Texas Department of Motor Vehicles; and the trailer was accordingly assigned a Vehicle Identification Number.

So to summarize, the trailer is used to transport, which is how vehicles are commonly defined and understood; it is considered a vehicle by the relevant state agency; and it is registered as a vehicle. We would have to sufficiently change the word "vehicle"[2] to exclude the reefer trailer from its definition. We are not inclined to do so.

AFFIRMED.

---

[1] While not determinative in this case, we agree with Travelers that the "vehicle" issue is not an "exclusion" but simply part of the definition of policy coverage, so the burden is on Kiolbassa.

[2] The argument that "vehicle" somehow means something different than usual because the Policy also mentions aircrafts and floating vessels is unsupported. The fact that the policy makes clear that it is referring to land, sea, and air does not change the meaning of "vehicle."